Grafton, }
June 1, 1938. }

MARTHA L. DANIELS *v.* ADAH BARKER & a.

SAME *v.* SAME

*Fred A. Jones* and *J. Weston Allen* (of Massachusetts) (*Mr. Allen* orally), for the plaintiff.

*Paul Gilioli* and *Louis A. Perkins* (of Vermont), by brief, for the defendants.

ALLEN, C. J.  I.  The plaintiff alleges wrongful interference in the marital relations between her and her former husband.  The defendants are his sister-in-law and nephew, and are mother and son.  The plaintiff's husband was well along in years when he married her.  It is her claim that the defendants were actuated by mercenary motives, to obtain her husband's property at his decease, as a reason for their alleged wrong.

The defendant sister-in-law testified that the relations between the husband and herself had been pleasant and friendly during a time preceding his marriage and continuing after it.  The plaintiff offered a witness in rebuttal to testify that before the marriage the sister-in-law exhibited hard feelings against her brother-in-law to the extent of neglect to obtain much needed medical assistance for him when he was ill with pneumonia, and while she was visiting him.  The offer of testimony from the witness also included a statement of the husband to him that his sister-in-law was trying to induce him to make a will, as the object of her visit, and his order to the witness to take measures to have her leave his home.

The evidence was offered, among other assigned reasons, to "dispute" her testimony.  It was excluded as not "necessary", and as relating to a time before the marriage.  In clarification of the offer, it was stated to be rebuttal upon the issue of relations between her and her brother-in-law and upon the issue of her credibility.

What the relations were, was a collateral issue, and how far evidence upon such an issue "should be carried for the purpose of disparaging a witness" is a question of fact determinable at the trial and not subject to revision.  *Spalding* v. *Merrimack*, 67 N. H. 382, 383, and cases cited.  But although the issue was collateral, it was a

material one. The sister-in-law's state of mind and attitude towards her brother-in-law, as well as his feelings towards her, were evidence on the issue of motive to alienate. The claim of relations of amity tended to disaffirm an improper motive of benefit from his estate, and evidence rebutting that of the claim was therefore competent. And relations between them before his marriage threw more than faint and remote light to show what they were after the marriage.

The exclusion of the evidence left that of the defendants upon the issue free from attack and gave them an undue benefit. Even if the evidence of prior relations introduced by the defendants were incompetent or admissible only in discretion, yet having been admitted, it stood open to contradiction in rebuttal. *Furbush* v. *Goodwin*, 25 N. H. 425, 448; *Dame* v. *Kenney*, 25 N. H. 318, 324, 325.

The offered evidence included statements to the witness by the plaintiff's husband. Except for the purpose of disclosing his feelings towards his sister-in-law, they were incompetent. The evidence of his order that she be made to leave his home was thus competent, but his statement that her visit was made to induce him to make a will was a narrative within the rule against hearsay evidence. The statement imported no inference of its truth. As thus limited, the exception is sustained.

II. At the conclusion of the charge the court informed the jury that if they needed further instructions, he would be at hand to receive their questions only for a short time. It is understood that plaintiff's counsel were present and heard the jury thus notified. No exception was then taken, and the issue of impropriety was first raised in the motion to set aside the verdicts. Consent to the notice was given by non-objection, and the exception is groundless. Since the plaintiff was present and "did not object to the procedure adopted," she is estopped from complaining. *Perreault* v. *Company*, 87 N. H. 306, 308, and cases cited.

It follows that the plaintiff is also barred from complaint that the court was not available to restate its charge to the jury on their request for a copy of it, or that a copy was not read to them. The announced departure of the court implied that the jury would receive no further instructions thereafter or restatement of any given.

III. Other grounds for the motion to set aside the verdicts are of irregularities in the supervision of the jury. The defendants' position that the averments in the plaintiff's bill of exceptions relating to them are not to be taken as facts found on hearing by the trial court, is ill premised. It is assumed that on the motion to vacate

the verdicts both parties were heard and offered, or had opportunity to offer, evidence upon any issues of fact presented, and the statute (P. L., c. 315, s. 8) requires the trial court to allow a bill of exceptions only if it is "conformable to the truth of the case." The averments in the bills of exceptions are required to be accepted as facts.

While the jury were deliberating, they asked the court what date should be used in considering an exhibit which the record does not identify. The question and its answer were both in writing and plaintiff's counsel were not aware of the incident until after the verdicts were returned.

It is not required that counsel be present during communications between the jury and court. If not made in open court, "written instructions may be sent to the jury without notice to counsel when the court is not in session, to be returned and filed with the verdict." *Rizzoli* v. *Kelley*, 68 N. H. 3, and cases cited. The essential point is that to have the trial fair the parties are entitled to be informed of all matters incident thereto which may affect their rights.

The failure here to return the written question and answer with the verdict was rendered harmless and without prejudice by their subsequent filing. But it is uncertain to what exhibit they related. The question and answer are not intelligible except with production of the exhibit. However, it is inferred from the record that the court was not requested to identify the exhibit, while a request if made would have been granted. Due diligence in the assertion of rights is demanded in the discharge of the duties of counsel. The plaintiff relies upon lack of knowledge, but she gained knowledge of the communication, and not pursuing inquiry to ascertain complete information about it, her charge of prejudice is not maintainable. In analysis, learning of the communication, she did not seek to ascertain what the exhibit was, and she has not shown that inquiry would not have produced disclosure.

The exception is overruled.

IV. During the jury's deliberations the officer in charge of them on their request supplied them with a dictionary, without the plaintiff's consent. The verdicts were thereby rendered unfair for two reasons. As one, the officer had no right to take the court's place, and assist the jury in any way in its consideration of the evidence. Also, the dictionary was incompetent evidence. If offered as evidence during the trial, its exclusion would have been required. When incompetent evidence which may be prejudicial is received, the verdict is set aside, without proof that the jury gave it any weight in reaching

the verdict. To require the losing party to prove actual prejudice would place a difficult and unjust burden on him. Error having been committed, in any event it must be shown to be harmless. Here, no use of the dictionary could be proper, and harmless use is conjectural. The rule that error vitiates a verdict if it may have prejudicially affected it, governs.

Cases on the precise point are naturally infrequent. The plaintiff has cited those of *Dulaney* v. *Burns*, (Ala) 119 So. Rep. 21; *Corpus Christi St. &c. Ry. Co.* v. *Kjellberg*, (Tex. Civ. App.) 185 S. W. Rep. 430; *Lightburne & Co.* v. *Bank*, (Tex. Civ. App.) 232 S. W. Rep. 343, and *Long* v. *Payne*, 190 N. Y. Supp. 803, in support of the exception.

The case of *Wright* v. *Clark*, 50 Vt. 130, is not followed. There the use of a dictionary led to a verdict of "wanton" conduct when only "somewhat careless" conduct was the jury's actual view. An actual or assumed dictionary definition of wantonness was thus adopted instead of the legal definition. For all that here appears, the jury may have used the dictionary to learn the meaning of some word or phraseology in the court's charge, and thus have given the charge a construction varying from the meaning intended by the court to be conveyed. If the meaning was not clear or not agreed upon without the use of a dictionary, it was not properly determined by such use as the court's mouthpiece.

V. The plaintiff took certain exceptions to the charge on the issue of the damages. They were disallowed for the reason that the verdicts, being for the defendants, rendered their validity moot. The plaintiff excepted to their disallowance. They should have been allowed. Other exceptions related to the issue of liability and fairness of trial, and an order here for a new trial on such grounds permits consideration of exceptions concerning damages if determination of their merits will aid to avoid, advance or simplify further litigation. *Derry Loan &c Co.* v. *Falconer*, 84 N. H. 450, 451, and cases cited.

The plaintiff took no exception to the denial of such of her requests for instructions as were not granted and therefore waived them, while the general exception to the charge on the issue of damages is unavailing. *State* v. *Sterrin*, 78 N. H. 220; *Burke* v. *Railroad*, 82 N. H. 350, 361.

One exception well taken is to the instruction that liability in the action for conspiracy was to be found if it brought about the separation of the plaintiff and her husband, breaking up their home and

severing the marital relations. In support of the exception it is argued that liability existed if the conspiracy was effective to produce the alienation of affections, although the separation was not a result of it. Elsewhere in the charge instruction was in substance given that the defendants were liable for conspiracy to which any disturbance of the "marital and conjugal relations" was due. The charge in its entirety fairly gave the jury to understand that if the execution of the conspiracy brought about any undue interference in the relations between the plaintiff and her husband, damages were to be awarded therefor.

Of more serious importance, the plaintiff is not entitled to a duplication of damages. If two distinct wrongs committed by the same person result only in a single and the same loss, the plaintiff must elect his remedy if they may not be pursued together without prejudice to the defendant. *Hutt* v. *Hickey*, 67 N. H. 411, 416. The case here is not one of different counts in the same action, where a single judgment is rendered, but is one of separate actions with a result of separate, independent judgments. For one judgment to be for an amount covering damage also included in the amount of the other judgment, would unjustly prejudice the defendants. They are the same persons in both actions. If they are not liable for alienation of affections, then their conspiracy to alienate them imposed no liability. An unexecuted or unsuccessful plan to do wrong is not a private injury. "The gist of an action . . . in the nature of a conspiracy, is not the unlawful or wrongful agreement and combination of the defendants, but their joint fraudulent acts, and the consequent damage resulting from the execution of this agreement." *Page* v. *Parker*, 40 N. H. 47, 66, 67. "The wrongs claimed to have been done to the plaintiff, and not the conspiring to do them, are the foundation of the action, and the damage resulting from the unlawful acts must be alleged." *Stevens* v. *Rowe*, 59 N. H. 578, 579. Other cases (*Fitzhugh* v. *Railway*, 80 N. H. 185, 189; *Langley* v. *Langley*, 84 N. H. 515, 516) are in accord. If the defendants are liable in the action for alienation, then the damages therein recoverable are not allowable in the action for conspiracy. It follows that only for damages other than those sustained by the alienation may there be recovery for action taken in pursuance of the conspiracy.

Whether evidence was introduced of damages in the action for conspiracy not recoverable in the action for alienation, seems doubtful. The allegations of damages in the declarations in the two actions are almost identical. But the evidence is not transferred,

and in the incompleteness of the record of the trial, no ruling is now made other than in avoidance of duplicating damages.

Another exception is to the court's omission in the action for alienation to charge that damages were to include the loss of the rights the plaintiff would have had in her husband's estate. As the outcome of their estrangement she obtained a divorce from him, in connection with which she received a temporary allowance and a final award of alimony. Her right to a divorce gave her the right to such part of her husband's estate, as justice entitled her to, as alimony. If under any view a plaintiff may recover for such damage as the result of the alienation of the affections of the spouse, no evidence has been transferred to show such a result. Moreover, for reasons already stated, allowance for damage of this nature in the action for conspiracy would bar recovery for it in any other action.

Another exception appears to have become nugatory by a modification of the instruction to which it was taken.

*New trial.*

All concurred.