PERLEY E. DUNHAM *v.* ROBERT STONE.

*Howard B. Lane* (by brief and orally), for the plaintiff.

*Ernest L. Bell, Jr.* and *James S. Davis* (*Mr. Davis* orally), for the defendant.

LAMPRON, J. The question to be determined in this case is whether or not there was sufficient evidence on which jurors could properly

find for the plaintiff on the matter of future pain and suffering beyond the day of the trial. If there was evidence from which the jury could find it more probable than otherwise that such damage would occur (*L'Esperance* v. *Sherburne*, 85 N. H. 103, 113) that issue was improperly withdrawn from the consideration of the jury and plaintiff's exception must be sustained. *Shepardson* v. *Perkins*, 58 N. H. 354, 355; *Walker* v. *Railroad*, 71 N. H. 271, 273; *Lamkin* v. *Johnson*, 72 N. H. 344, 345; *Evans* v. *Foster*, 95 N. H. 194, 195. On the contrary, if reasonable men on the evidence could only reach a conclusion on that issue by conjecture, chance, or doubtful and unsatisfactory speculation, it was the duty of the Court to withdraw that issue from their consideration. *Deschenes* v. *Railroad*, 69 N. H. 285, 291; *Nadeau* v. *Stevens*, 79 N. H. 502; *Ahern* v. *Railroad*, 88 N. H. 287; *Abell* v. *Company*, 95 N. H. 439, 441.

In ruling on defendant's motion, the Court was obliged to consider the evidence for the plaintiff as true and to construe all the evidence most favorably to the plaintiff. *Shimkus* v. *Caesar*, 95 N. H. 286, 287; *Leonard* v. *Manchester*, *ante*, 115.

The plaintiff was injured on October 22, 1947, receiving a fracture of the first lumbar vertebra. He was taken to the hospital and in a few days was placed in a plaster cast covering his body from hips to arm pits. He was in a cast until January 20, 1948 when he was fitted to a steel brace. This brace was exhibited to the jury. It consists of a collar for each shoulder and two straps which go under his crotch, and two steel bars to support his back which hook in front by four straps. The plaintiff has worn that brace or a similar one since, and was wearing it on the day of the trial.

When he has not been working he has taken the brace off sometime in the day but the last time he had it off was in August, 1948; his back ached so he had to put it back on and he has not had it off since except to sleep. He puts the brace on when he gets up in the morning and removes it when he goes to bed at night. From about February 20, 1948 up to and including the day of the trial he has been sleeping at night on a board with a mattress on it and a pillow under his back.

When the plaster cast was taken off, his back was weak and felt as though there were pins and needles sticking into him in the lower part of it, and he did not feel like sitting up. He has had that sensation more or less ever since the accident happened and he still has it, having had it the morning of the trial. On the day of the trial he did not think there was much difference in the feeling except that it did not come so often. However, it comes often enough that it has gotten to

be second nature with him and he does not take any count of the times. When he gets overtired his back aches so he cannot sleep at night. He never had any trouble with his back before the accident.

Plaintiff's attending physician was asked the following question and made the following answer thereto. "Q. Doctor, if Mr. Dunham complains of soreness and pain in his back when he doesn't wear the brace, and if he states that when he wears the brace he doesn't have the soreness and pain in his back, should he wear the brace? A. I believe he should. We frequently see these backs where one bone is broken. The fracture line can run up into the facet or into a disk between the bones, and in healing the fracture line causes pain there. We may not see the healed line, but it still causes pain."

There was no direct evidence that the plaintiff will suffer pain in the future.

Undoubtedly the evidence was insufficient to justify a finding that the plaintiff would experience pain and suffering for the remainder of his life. *L'Esperance* v. *Sherburne, supra; Monroe* v. *Sterling,* 92 N. H. 11, 15. That, however, is not the issue here, but rather if there was sufficient evidence from which the jury could find it was more probable than otherwise that plaintiff would suffer pain beyond the day of the trial.

We are of the opinion that the jury, drawing such inferences as are justified by the common experiences and observations of mankind (25 C. J. S., s. 93, p. 641; see *State* v. *York,* 74 N. H. 125, 126; *Moran* v. *Railway,* 74 N. H. 500, 501; *Mehigan* v. *Sheehan,* 94 N. H. 274, 275; 9 Wig. Ev. (3d *ed*), s. 2570) from the evidence of the nature of plaintiff's injury, the brace which he has worn and is still wearing, the manner in which he has had to sleep at night, and his testimony that his pain and suffering has continued almost unabated and unchanged for nearly a year, had a sufficient basis on which it could find that it was more probable than otherwise that plaintiff would experience pain and suffering beyond the day of the trial as the direct, natural and probable result of the defendant's fault. *Walker* v. *Railroad,* 71 N. H. 271, 273; *Wilks* v. *St. Louis,* 159 Mo. App. 711; *Cluster* v. *Upton,* 165 Md. 566; *Motts* v. *Company,* 274 Mich. 437; *Alamo* v. *Del Rosario,* 98 F. (2d) 328; *Prettyman* v. *Topkis,* 9 Del. 568; see annotation 115 A. L. R. 1149. Such damages are limited, of course, to compensation only for whatever pain and suffering the plaintiff will more probably than otherwise experience in the future from his injuries. They are not to include any award for pain and suffering the experiencing of which by the plaintiff is merely possible, conjectural or

speculative. *Ernshaw* v. *Roberge,* 86 N. H. 451, 454; *Emerson* v. *Company,* 87 N. H. 108, 112; *Durivage* v. *Tufts,* 94 N. H. 265, 270.

The plaintiff's exception is sustained and a new trial is ordered. Whether the new trial shall be of the whole case, or of the issue of damages only, is for the Superior Court to determine. *Emerson* v. *Company, supra,* 113.

*New trial.*

DUNCAN, J., dissented: the others concurred.

DUNCAN, J., *dissenting:* According to my interpretation of the testimony of the plaintiff's attending physician, he attributed no ill effects to the plaintiff's injury at the time of the trial, and recognized at most only a possibility of future suffering. Such proof is insufficient to support a verdict for future damages according to the principles established by *L'Esperance* v. *Sherburne,* 85 N. H. 103 and *Emerson* v. *Company,* 87 N. H. 108. I do not conceive that the probable consequences of an injury such as the plaintiff received are so obvious or generally known that the common knowledge of laymen may be substituted for the judgment of experts as to what they will be. Such prognosis has not passed from the "field of expertness" into the "area of the commonplace supposedly within the ken of every person of moderate intelligence." See Maguire, Evidence—Common Sense and Common Law, *p.* 30.