**Raymond J. PITTMAN, Plaintiff, Appellant,**

v.

**Harold A. LITTLEFIELD, E. Kenneth Littlefield, Edith L. Howard, d/b/a Littlefield Lumber Co., Defendants, Appellees.**

**No. 7732.**

United States Court of Appeals, First Circuit.

Feb. 24, 1971.

Richard E. Dill, Portsmouth, N. H., with whom Boynton, Waldron & Dill, Portsmouth, N. H., was on brief, for appellant.

John F. Cullity, Manchester, N. H., with whom Sheehan, Phinney, Bass & Green, Manchester, N. H., was on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiff, a New York resident, sued defendants, a partnership doing business as Littlefield Lumber Co. in Portsmouth, New Hampshire, to recover for injuries sustained on defendants' premises allegedly due to defendants' negligence. The case was tried to a jury, which returned a verdict for defendants. Plaintiff moved for judgment notwithstanding the verdict or a new trial.[1] The court denied the motion, and plaintiff appeals.

On January 3, 1967, plaintiff, then employed by a Boston-based building contractor, went to the Littlefield Lumber Company to buy some Structolite, a type of plastering material. Robert Littlefield, defendants' warehouse supervisor, told plaintiff to bring his truck around to the loading platform while he entered the warehouse to get the Structolite. According to Littlefield's testimony, Structolite is stored in eighty-pound bags piled seven or eight bags high on wooden pallets. The pallet is a wooden platform about eighteen by twenty-four inches, supported by twin two-by-four inch runners. The Structolite is transported within the warehouse by means of a fork lift handtruck, which is inserted beneath the pallet. The bottom edges of the pallet's runners are beveled on both ends, with three-inch bevels in the rear and one-inch bevels at the front. The long bevels in the rear make it easier to pivot the pallet onto the handtruck, whereas the shorter bevels in front prevent the bags from falling forward when the load is set down.

Littlefield placed a handtruck under a pallet laden with bags of Structolite and carried them to the entrance where plaintiff was waiting with his truck. Because the large bags overhung the pallet by about thirty inches, Littlefield did not realize he was carrying the pallet backwards, with the long-beveled end in front. Near the entrance he stopped to set down the Structolite. As he removed the handtruck, the pallet pivoted forward on the long-beveled end and the bags of Structolite fell through the entrance onto plaintiff, who sustained severe injuries.

The trial judge instructed the jury that plaintiff had proved conclusively that he was injured by the falling bags and that there was no question of contributory negligence. The only question with regard to liability was whether defendants, through their agent Robert Littlefield, had acted negligently. Plaintiff contended that Littlefield was negligent in at least three respects: (1) in storing the pallet with the long-beveled edge nearest the wall so that, when it was lifted onto the handtruck, the long-beveled end rode in front; (2) in failing to stop and inspect the pallet before loading it onto the handtruck; and (3) in failing to exercise due care while unloading the pallet. Plaintiff presented strong evidence in support of these contentions. Littlefield testified that it was his responsibility to make sure that the pallets and bags of Structolite were stored correctly. He conceded that the normal way to carry the pallet was with the short-beveled edge in front and that it was improper to store it with the long-beveled edge nearest the wall. He noted that, while it was possible for the pallet to tip over no matter which way it was carried, it was unlikely to tip if carried properly, i. e., with the short-beveled end in front, adding that, had he realized he was carrying the pallet backward, he would have changed it.

The only evidence on which the jury could have based their conclusion that defendants were not negligent was Littlefield's testimony that he had never "at any time during the period

---

1. We do not consider directing a verdict. Strictly, plaintiff was entitled to no more than an instruction on liability, since the issue of damages remained. This he properly asked for. However, as a matter of our discretion we will not on this appeal, with the burden on the plaintiff, remove that issue forever from the case. We restrict our inquiry to whether there should be a new trial.

that [he] \* \* \* worked in the warehouse, seen or had supplies of this type tip over from a pallet." Evidence of the absence of prior accidents is admissible, but the party seeking to rely on it must show that conditions during the period in question were substantially similar to those prevailing at the time of the accident. Howe v. Jameson, 91 N.H. 55, 13 A.2d 471 (1940) (by implication); Canney v. Rochester Agricultural & Mechanical Association, 76 N.H. 60, 79 A. 517 (1911); accord, Chesapeake & O. Ry. v. Newman, 243 F.2d 804, 813 (6th Cir. 1957); Wray v. Fairfield Amusement Co., 126 Conn. 221, 225–226, 10 A.2d 600, 603 (1940). *See generally* Annot., 31 A.L.R.2d 190, 220–226 (1953). In the instant case, the testimony was admitted without any foundation being laid. For all the jury knew, there were no prior accidents because the pallets had always been stored correctly in the first place.[2] It was sheer conjecture for them to rely on the lack of prior accidents without some showing that in the past the pallets had often been transported with the long-beveled end in front. A verdict based on sheer conjecture cannot stand. Dunham v. Stone, 96 N.H. 138, 139, 71 A.2d 412, 413 (1950). Since this was the only evidence in defendants' favor, we cannot conclude that its admission was harmless, *cf.* Palmer v. Edgerly, 87 N.H. 391, 395, 181 A. 419 (1935), and plaintiff is therefore entitled to a new trial. *See* Powell v. Gagne, 102 N.H. 256, 257, 154 A.2d 750, 751 (1959); Daniels v. Barker, 89 N.H. 416, 420–421, 200 A. 410, 415 (1938).

 Plaintiff also objects to the use by defendants' counsel of a letter allegedly written by a Dr. Hugenberger to plaintiff's employer. Counsel showed this letter to plaintiff during cross-examination without establishing its authenticity. It was not error for the trial judge to allow the letter to be used for the purpose of refreshing plaintiff's present memory. State v. Hale, 85 N.H. 403, 408, 160 A. 95, 98 (1932); *see* Champion Spark Plug Co. v. Reich, 7 F. R.D. 587 (W.D.Mo.1947); Israel v. Campbell, 163 Cal.App.2d 806, 819–820, 330 P.2d 83, 90 (1958); 3 Wigmore, Evidence §§ 758, 759, 764 (Chadbourn rev. 1970). However, since it was not admissible, counsel should not have been permitted to suggest that the letter contradicted plaintiff's earlier testimony. *See* Williams v. Williams, 87 N.H. 430, 431, 182 A. 172, 173–174 (1935).[3] Nevertheless, inasmuch as that testimony related to damages rather than liability, the error was harmless with regard to the issues of this appeal.

 Finally, plaintiff contends that the jury's request for further instructions from the trial judge shows that they were confused and "fell into plain mistake." The jury asked, "Are we to consider only Richard Littlefield's actions or are we to consider the Lumber Company as a whole?" The judge's response—that they were to "treat Mr. Littlefield as if it was his company"—would appear to have been adequate to clear up any confusion on that issue. We see no reason not to apply the normal presumption that the jury followed its instructions correctly. Glidden v. Brown, 99 N.H. 323, 325, 110 A.2d 277, 279 (1954).

Reversed and remanded for a new trial.

---

2. Littlefield testified that it was not normal practice to stop and inspect the pallet immediately before loading it onto the handtruck. However, if he was always careful to store the pallets correctly, such an inspection would not have been necessary.

3. Merely asking the question necessarily contained such a suggestion. This could not be avoided. However, the question should have been asked as innocuously as possible. There should have been no identification of the author or any recitation of its contents. Where the contents themselves were inadmissible, the witness should merely have been shown the paper and asked whether it refreshed his recollection. If he replied in the negative, the jury should have been instructed that no inference was to be drawn from the question.