STATE OF HAWAII, Plaintiff-Appellee, *v.* THOMAS ALLEN AMORIN, also known as Thomas Allen Morin, Defendant-Appellant

NO. 6064

FEBRUARY 15, 1978

RICHARDSON, C. J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

624

OPINION OF THE COURT BY RICHARDSON, C. J.

Defendant-Appellant Thomas Allen Amorin, also known as Thomas Allen Morin, was indicted for murder. At trial, defendant's sole defense was insanity. The jury was given the choice of three possible verdicts: 1) Guilty; 2) Not Guilty; or 3) Not Guilty by reason of physical or mental disease, disorder or defect excluding responsibility. The jury found him guilty of murder and he was sentenced to twenty years in the Hawaii State Prison. Defendant appeals seeking to reverse the judgment of the Circuit Court, citing three alleged instances of error.

First, defendant contends that it was error for the trial court to modify his requested instruction as to the consequences of an acquittal by reason of insanity. Since defendant raised the defense of insanity he was entitled to request an instruction to the jury as to the consequences of an acquittal by reason of insanity. Hawaii Penal Code § 704-402(1) and (2).[1] Defendant's requested instruction was taken almost

---

[1] HRS § 704-402(1) and (2) (Special Supp. 1975). Hawaii Penal Code § 704-402(1) and (2) reads:
   (1) Physical or mental disease, disorder, or defect excluding responsibility is a defense.
   (2) Whenever the defense provided for by subsection (1) is submitted to a jury, the court shall, if requested by the defendant, instruct the jury as to the consequences to the defendant of an acquittal on the ground of physical or mental disease, disorder, or defect excluding responsibility.

verbatim from Hawaii Penal Code § 704-411(1).[2] But the court modified the requested instruction by adding the following:

This instruction is given only for the purpose of *informing* you of the consequences to the defendant that may result

---

[2] Hawaii Penal Code § 704-411(1) reads:

(1) When a defendant is acquitted on the ground of physical or mental disease, disorder, or defect excluding responsibility, the court shall, on the basis of the report made pursuant to section 704-404, if uncontested, or the medical evidence given at the trial or at a separate hearing, make an order as follows:

(a) The court shall order him to be committed to the custody of the director of health to be placed in an appropriate institution for custody, care, and treatment if the court finds that the defendant presents a risk of danger to himself or the person or property of others and that he is not a proper subject for conditional release; or

(b) The court shall order the defendant to be released on such conditions as the court deems necessary if the court finds that the defendant is affected by physical or mental disease, disorder, or defect and that he presents a danger to himself or the person or property of others, but that he can be controlled adequately and given proper care, supervision, and treatment if he is released on condition; or

(c) The court shall order him discharged from custody if the court finds that the defendant is no longer affected by physical or mental disease, disorder, or defect, or, if so affected, that he no longer presents a danger to himself or the person or property of others and is not in the need of care, supervision, or treatment.

Defendant's requested instruction reads:

When a defendant is acquitted on the ground of physical or mental disease, disorder, or defect excluding responsibility, the court shall order a separate post-acquittal hearing for the purpose of taking evidence on the issue of the risk of danger which the defendant represents to himself or to the person or property of others. Based upon the evidence given at the hearing, the court shall make one of the three following orders:

(1) The court shall order him to be committed to the custody of the director of health to be placed in an appropriate institution for custody, care, and treatment if the court finds that the defendant presents a risk of danger to himself or the person or property of others and that he is not a proper subject for conditional release; or

(2) The court shall order the defendant to be released on such conditions as the court deems necessary if the court finds that the defendant is affected by physical or mental disease, disorder, or defect and that he presents a danger to himself or the person or property of others, but that he can be controlled adequately and given proper care, supervision, and treatment if he is released on condition; or

(3) The court shall order him discharged from custody if the court finds that the defendant is no longer affected by physical or mental disease, disorder, or defect, or, if so affected, that he no longer presents a danger to himself or the person or property of others and is not in need of care, supervision, or treatment.

from an acquittal on the ground of physical or mental disease or disorder or defect excluding responsibility. It is not meant in any way to *influence* your decision (emphasis added).

Defendant objected to the modification both after it was made and after it was read to the jury. The objections were overruled and the defendant appeals contending that the modification nullified his requested instruction.

Second, in his rebuttal closing argument at trial, the prosecuting attorney commented to the jury that if acquitted, the defendant would be walking the street. Defendant immediately moved for a mistrial on the grounds that the remark was improper and prejudicial since it disparaged his insanity defense. The motion for mistrial was denied and defendant now contends that the denial was error.

Third, defendant moved for a new trial based on information from the foreperson of the jury concerning possible juror misconduct. At the hearing on the motion for a new trial, the testimony revealed that a juror looked up the definition of "insanity" in *Webster's Dictionary*, *Black's Law Dictionary* and a Random House dictionary just before closing arguments. The juror also photocopied nine or ten pages of the definition from *Black's Law Dictionary*. But he neither showed the copy to any other juror nor did he tell any other juror what the definitions were.

The jury was unable to reach a verdict after their first vote but returned a verdict of guilty after being informed that a juror had researched the definition. The juror guilty of the alleged misconduct testified that he was not influenced by the extraneous definitions and based his decision solely on the instruction as to insanity as given by the trial court. The foreperson of the jury also testified that she was not influenced by the knowledge that a member of the jury had researched the definition.

Defendant's motion for a new trial was denied. Defendant now argues on appeal that it was error to deny the motion for a new trial since it was harmful misconduct on the part of the juror to research the definition of "insanity" and that the misconduct infected the jury and the verdict.

We affirm the judgment of the trial court.

The issues presented on appeal are:

(1) Whether the trial court erred in modifying the defendant's requested instruction as to the consequences of an acquittal by insanity?

(2) Whether it was harmful misconduct for the prosecuting attorney to comment in closing rebuttal argument that if acquitted the defendant would walk the street?

(3) Whether it was harmful misconduct on the part of a juror to consult several dictionaries for the definition of "insanity" and whether that misconduct infected the jury and the verdict?

(4) Whether the cumulative effect of the alleged errors requires reversal even though each error taken individually may be harmless?

I

Hawaii Penal Code § 704-402(2)[3] gives a defendant in a criminal case in which the defense of insanity is raised the right to request and receive an instruction to the jury as to the consequences of an acquittal by reason of insanity. The purpose of allowing such an instruction is purely informational.

> Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning . . . . We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two verdicts.

*Lyles v. United States*, 254 F.2d 725, 728 (D.C. Cir. 1957). If the jurors are not informed as to the consequences of an acquittal due to insanity, there is the possibility that they will

---

[3] *See* note 1, *supra*.

fear that such an acquittal will necessarily lead to the defendant's release. Consequently, the statute was promulgated to aid the defendant by obviating any possible bias of the jury against a finding of not guilty due to insanity. *State v. Shoffner,* 31 Wis.2d 412, 143 N.W.2d 458 (1966).

But the role of the jury is to determine only the facts and apply the law as given by the court. The jury should be concerned only with the evidence properly presented and not with the possible punishment of the defendant. *State v. Park,* 159 Me. 328, 193 A.2d 1 (1963). In determining the factual issue of insanity, the jury should not be influenced by the extraneous consideration of the consequence of a finding of insanity wholly unconnected and apart from the evidence. *State v. Garrett,* 391 S.W.2d 235 (Mo. 1965). Thus, the thrust of Hawaii Penal Code § 704-402(2)[4] is limited. It is to be used only to inform the jury of the consequences of an acquittal by insanity. Such an instruction should be tantamount to a mere news item and should not be used to influence the decision of the jury in any way.

The modification adopted by the trial court correctly indicated that the instruction as to the consequences of an acquittal by insanity was to be used only as information and should not influence the decision by the jury. Thus, the modified instruction was correct and a proper statement of the law.

II

The prosecuting attorney's comment in closing argument that if acquitted the defendant would "walk the street" was improper. Defendant's sole defense was insanity. If acquitted due to insanity the trial court could order either that the defendant be committed to an appropriate institution, be released on the court's conditions, or be discharged. Hawaii Penal Code § 704-411(1).[5] But the effect of the prosecutor's comment was to invite the jury to convict the defendant even

---

[4] *Id.*

[5] *See* note 2, *supra.*

if they might have believed that the defendant was insane. *Evalt v. United States,* 359 F.2d 534 (9th Cir. 1966). It was an attempt to lead the jury to believe that if defendant were acquitted due to insanity he would nevertheless automatically be set free, possibly to murder again. *State v. Johnson,* 267 S.W.2d 642 (Mo. 1954).

But even though a prosecutor's remarks may have been improper, any harm or prejudice resulting to the defendant can be cured by the court's instructions to the jury. In such cases it will be presumed that the jury adhered to the court's instructions. *State v. Kahalewai,* 55 Haw. 127, 516 P.2d 336 (1973); *State v. Cavness,* 46 Haw. 470, 381 P.2d 685 (1963); *Donnelly v. De Christoforo,* 416 U.S. 637 (1974). Although the prosecuting attorney's comment that if acquitted defendant would "walk the street" should not have been made, its prejudicial impact was cured by the court's instruction regarding the consequences of an acquittal by reason of insanity. The instruction effectively informed the jury that if acquitted by insanity the defendant would not necessarily be set free but would be subject to further disposition by the court. Consequently, any fear by the jury that the defendant would be automatically released if a verdict of acquittal by insanity were entered was subsequently dispelled. Thus, since the court's instruction nullified the prosecuting attorney's comment, we are satisfied beyond a reasonable doubt that the error was rendered harmless.

### III

It was misconduct for a juror to consult a dictionary for a definition of "insanity" immediately prior to jury deliberation. HRS § 635-15 (Supp. 1975)[6] provides that all questions of law are to be decided by the court. The function of the jury is to decide questions of fact. Consequently, the trial court is to

---

[6] HRS § 635-15 (Supp. 1975) reads:
Functions of court and jury. In jury trials all questions of law shall be decided by the court and all questions of fact by the jury.

be the only source of law and must instruct the jury thereon. *State v. Marley,* 54 Haw. 450, 509 P.2d 1095 (1973). All definitions and statements of law applicable to an issue being resolved by the jury must first go through the medium of the trial judge. *Smith v. State,* 95 So.2d 525 (Fla. 1957); *Corpus Christi St. and Inter-Urban Ry. Co. v. Kjellberg,* 185 S.W. 430 (Tex. App. 1916). If such definitions or statements of law are derived from a source other than either the trial court or admitted evidence, the threat arises that the jury may have a conception of the law or a definition different from that intended by the court. *Daniels v. Barker,* 89 N.H. 416, 200 A. 410 (1938); *Palestroni v. Jacobs,* 10 N.J. Super. 266, 77 A.2d 183 (1950). But it is not required that jurors be totally ignorant of the facts or issues involved. *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). During deliberation each juror may call upon all of his life's experiences. But a juror may not take affirmative action during the trial to research a definition or statement of law given by the court. Thus, since in this case, immediately prior to deliberation, a juror affirmatively researched the definition of "insanity" contained in the court's instruction, his conduct was improper.

But not all juror misconduct necessarily dictates the granting of a new trial. A new trial will not be granted if it can be shown that the jury could not have been influenced by the alleged misconduct. *Lyon v. Bush,* 49 Haw. 116, 412 P.2d 662 (1966); *Public Operating Corp. v. Weingart,* 257 App. Div. 379, 13 N.Y.S.2d 182 (1939). Rule 52(a) of the Hawaii Rules of Criminal Procedure[7] directs that any error will be harmless and disregarded if it does not affect the substantial rights of the complaining party. Further, it must be shown beyond a reasonable doubt that the error was harmless. *State v. Pokini,* 57 Haw. 26, 548 P.2d 1402 (1976).

The juror misconduct in this case was harmless and a new trial was properly denied. The juror responsible for the mis-

---

[7] H.R.Cr.P. 52(a) reads:

Harmless error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

Note that effective January 1, 1977 the Hawaii Rules of Penal Procedure replaced the Hawaii Rules of Criminal Procedure. But Rule 52(a) was not altered.

conduct testified that although he did look up the definition of "insanity" in three dictionaries and xeroxed one of the definitions, the definition that he could remember was the same as the court's definition and that he, in fact, based his vote solely on the definition given by the court. In short, his testimony indicates that he was not influenced by the extraneous definitions.

The misconduct did not infect the rest of the jury. The juror responsible for the error testified that he had neither displayed the copy of the definition that he had xeroxed to the rest of the jury nor told any of the jurors what he had found. This was corroborated by the testimony of the foreperson of the jury who also stated that although she knew that a juror had looked up the definition, since she was not told what the extraneous definition contained she was in no way influenced by it. Appellant bases his argument that the rest of the jury was influenced by the individual juror misconduct on the fact that the vote was unanimously guilty immediately after the jury was informed that a juror had looked up the definition even though they were not told what the definitions in the dictionaries were. But there is no evidence to show that the balloting was done openly. Thus, to assume that the rest of the jurors were influenced by the mere knowledge that a juror had looked up the defintion of "insanity" without any indication that they either knew what the definitions were or how the particular juror had voted would be pure conjecture.

We are satisfied beyond a reasonable doubt that the juror misconduct in this case was harmless and a new trial was properly denied.

IV

Although each error standing alone may be harmless, the cumulative weight of the errors may create such an atmosphere of bias and prejudice so as to deprive the defendant of a fair trial. *State v. Kahalewai, supra; Scott v. State,* 47 Ala. App. 509, 257 So.2d 369, (Crim. App. 1972).

In this case, however, the cumulative effect of the misconduct of the juror and the prosecuting attorney did not

result in substantial prejudice to the defendant. The misconduct of the prosecuting attorney was cured by the instruction given by the trial court. The juror misconduct was harmless error. The errors are not interrelated and each error taken individually had no effect on the outcome of the trial. Thus, we are satisfied that their cumulative effect was harmless and did not deprive the defendant of a fair trial.

Affirmed.

*Edmund K. U. Yee,* Deputy Public Defender (*Marie N. Milks* on the briefs) for Defendant-Appellant.

*Arthur E. Ross,* Deputy Prosecuting Attorney, for Plaintiff-Appellee.