**UNITED STATES of America, Appellee,**

v.

**Donald Eugene PARKER, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Nicholas FAITHE, Appellant.**

**Nos. 75–3649, 76–1312 and 76–1728.**

United States Court of Appeals, Ninth Circuit.

Jan. 10, 1977.

Certiorari Denied April 18, 1977. See 97 S.Ct. 1659.

Peter G. Keane (argued), of Keane & Keane, San Francisco, Cal., for appellant in Nos. 75–3649 and 76–1312.

Michael J. Keady (argued), San Francisco, Cal., for appellant in No. 76–1728.

Lawrence Edelman, Asst. U.S. Atty. (argued), San Francisco, Cal., for appellee.

Before MERRILL and WRIGHT, Circuit Judges, and PALMIERI,* District Judge.

PALMIERI, District Judge:

Defendant Parker was indicted on four counts of armed bank robbery [1] (Counts I–IV) and one count of bank larceny [2] (Count V). Defendant Faithe was indicted on one count of armed bank robbery (Count IV). Count IV was subsequently severed. Parker was convicted by a jury on Counts I,

---

* Honorable Edmund L. Palmieri, Senior United States District Judge, Southern District of New York, sitting by designation.

1. 18 U.S.C. §§ 2113(a), 2113(d).

2. 18 U.S.C. § 2113(b).

III, and V, and at a later trial Parker and Faithe were convicted by a jury on Count IV. Both defendants appeal raising separate and distinct issues.

The evidence adduced at the two trials, construed in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Glover*, 514 F.2d 390 (9th Cir.), *cert. denied*, 423 U.S. 857, 96 S.Ct. 108, 46 L.Ed.2d 83 (1975), established that on three dates in July 1975 Parker and another armed man entered banks in California, collected money from cash drawers at various tellers' windows, and then fled. For each robbery Parker was identified by eyewitnesses or bank surveillance photographs or a combination of both. The evidence also established that on another occasion in July 1975 Parker entered a California bank which he had visited earlier on that day and presented a bill in Chinese currency to a teller to be converted into dollars. After waiting a few moments, he ran down to the last counter, grabbed the money out of the hands of the teller standing there, and ran out the front door of the bank. Parker was positively identified by eyewitnesses and fingerprints found on the counter at the bank. The evidence showed that Parker fled the scene in the same automobile that he used to flee after one of the bank robberies.

The evidence against Faithe at the trial of Count IV established that he was the bearded white male who accompanied Parker during the July 24, 1975 armed bank robbery. Although Parker was positively identified by eyewitnesses, bank photographs, and fingerprints, the identification of Faithe was less clear and much bruited at the trial. Nine bank witnesses testified, each of whom had attended a line-up five days before the trial. While only three witnesses identified Faithe at the line-up, six witnesses later identified him at the trial. These witnesses testified that the robber had a beard. A counsellor from a drug treatment clinic testified that Faithe was clean shaven on the day before the robbery.

In order to link Faithe to Parker, the Government introduced Parker's wedding certificate to show that Faithe was a witness at Parker's wedding approximately two months before the robbery and that both had given the same address at that time. A used car dealer, Bagaw, testified that two days after the robbery he sold a car to Parker who was accompanied by a white male whom Bagaw was unable to identify. This white male had asked Bagaw if the car could be driven to New York. There was evidence that Faithe was born in New York, and the Government argued that the jury could infer from this evidence that Faithe was Parker's companion two days after the robbery.

### Parker's Confession

■ Parker argues that his convictions on Counts I, III, and V should be reversed because they were based on his involuntary confession made shortly after his arrest. We disagree. It is undisputed that Parker, a heroin addict with a $300 a day habit, was arrested about 2 a. m. on August 4, 1975, taken to the Albany Police Station, and questioned by federal agents from 3 a. m. to 7 a. m. During that questioning, Parker confessed to the five charges contained in the indictment as well as many other crimes. No stenographic or tape recording was made of the interview, and there was a dispute as to whether Parker was threatened with physical force or promised drugs by the officers if he cooperated.

In accordance with the mandate of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and 18 U.S.C. § 3501, the trial court conducted a pre-trial hearing to determine the voluntariness of Parker's confession. Based on the testimony of Parker and the officers present at the questioning, the trial judge determined that the confession was voluntary. The trial court's determination of voluntariness may not be disturbed on appeal unless it was "plainly untenable" *United States v. Tanks*, 464 F.2d 547, 548 (9th Cir. 1972) or "clearly erroneous," *United States v. Maxwell*, 484 F.2d

1350, 1352 (5th Cir. 1973). Due regard must be given to the trial judge's opportunity to view the demeanor of the witnesses and assess their credibility, *Wright v. North Carolina*, 483 F.2d 405, 408 (4th Cir. 1973), *cert. denied*, 415 U.S. 936, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1974).

Parker's arguments on appeal are a substantial repetition of those made to the trial judge and rejected by him. Parker urges this court to reassess the evidence presented to the trial court and reach a conclusion contrary to that made below. His arguments, however, fail to demonstrate clear error by the trial court, and, thus, the trial court's finding of voluntariness is affirmed.[3]

### The Warrantless Arrest

 Parker also contends that the government agents' failure to obtain an arrest warrant vitiated his arrest and rendered his subsequent confession illegal. Parker does not dispute that the agents had probable cause to arrest him, but asserts that they should have obtained a warrant in the approximately 34 hours between the time that they became aware of his whereabouts and the time of the arrest. This argument has no merit. While it is preferable for law enforcement officers to obtain arrest warrants where feasible, *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Wong Sun v. United States*, 371 U.S. 471, 479–82, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), an arrest supported by probable cause should not be invalidated solely because the officers failed to secure a warrant, *Gerstein v. Pugh*, 420 U.S. 103, 113, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *United States v. Hofman*, 488 F.2d 287 (5th Cir. 1974). Although Parker argues that the officers had ample opportunity to obtain an arrest warrant, this argument, even

if true, does not invalidate his arrest, *United States v. Burnett*, 526 F.2d 911 (5th Cir.), *cert. denied*, 425 U.S. 977, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976).[4]

### The Prosecutor's Closing Argument in the Case of Parker

 Finally Parker argues that his conviction on Count IV should be reversed on the ground that the prosecutor improperly commented on his failure to testify. Parker had walked in front of the jury solely for the purpose of displaying his gold capped tooth, a feature of his appearance which none of the eyewitnesses had testified about in identifying him as the robber.[5] Although the prosecutor's statement did not directly deal with Parker's failure to take the stand, it did refer to his silence and, thus, was improper. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). While it was entirely appropriate for the prosecutor to argue to the jury that Parker's tooth might have been capped after the robberies took place, it was improper for him to comment on what Parker "failed to state" or "didn't tell us." The error, however, does not require reversal of the conviction because it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The comment was not extensive, it did not stress any inference of guilt from Parker's silence, and there was no substantial evidence that could have supported an acquittal. *Anderson v. Nelson*, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968); *Scarborough v. Arizona*, 531 F.2d 959, 962 (9th Cir. 1976).

### The Evidence of Faithe's Heroin Addiction

Faithe raises four contentions on this appeal none of which is sufficient to warrant reversal of his conviction.

---

3. Since we find that the confession was voluntary, there is no merit to Parker's contention that the evidence admitted at his trial of Count IV was tainted by the involuntary confession.

4. Since we find that there was no Fourth Amendment violation, there is no basis on which Parker can argue that the evidence at the trial of Count IV was tainted.

5. The prosecutor stated:

 Another thing is with respect to Mr. Parker's teeth. He very politely showed us that he had a gold cap around one of his teeth. There is one thing he failed to state, one thing he didn't tell us, is when that cap was put on.

Faithe's main argument is based on the admission of evidence concerning his heroin addiction which he argues was improper and highly prejudicial. Faithe's addiction came into the case through the admission in evidence of a business record of a drug treatment clinic to which Faithe had reported on the day before the robbery. A drug counsellor at the clinic had testified that Faithe was clean shaven on that date. Eyewitnesses to the robbery testified that the robber had a beard. The evidence showed that this drug counsellor had only seen Faithe on one occasion some nine months before the trial and that this counsellor routinely saw 40 to 50 persons a week.

■ The trial judge understandably sought out the clinic's written record of Faithe's visit as more reliable evidence of the date of his appearance. This document established that Faithe had been addicted to heroin for approximately ten years and that he had been instructed to return to the clinic the next day (the day of the robbery), but had failed to do so. Faithe introduced the document in evidence assertedly as a tactical move because he believed that the court would permit the Government to introduce it and he wanted to "take the sting out of it." Having made that tactical decision, Faithe cannot now complain that the prosecution was able to argue that the evidence of Faithe's addiction created an inference that he needed money and suggested a motive for the bank robbery.

■ Under appropriate circumstances, evidence of narcotics dealings is admissible to show a defendant's motive to commit a robbery. *United States v. Lee*, 166 U.S. App.D.C. 67, 509 F.2d 400 (1974). While such evidence may present a danger of unfair prejudice to the defendant, that danger must substantially outweigh the probative value of the evidence before a court may properly exclude it. Federal Rules of Evidence 403. As this court stated in *United States v. Mahler*, 452 F.2d 547 (9th Cir. 1971), *cert. denied*, 405 U.S. 1069, 92 S.Ct. 1517, 31 L.Ed.2d 801 (1972), evidence relevant to a defendant's motive "is not rendered inadmissible because it is of a highly

prejudicial nature. . . . The best evidence often is." *Id.* at 548. Moreover, the district judge's determination in this area is to be reversed only if he has abused his wide discretion. *United States v. Campbell*, 466 F.2d 529 (9th Cir.), *cert. denied*, 409 U.S. 1062, 93 S.Ct. 571, 34 L.Ed.2d 516 (1972). The district judge did not abuse his discretion in admitting this evidence, and his determination is accordingly affirmed.

### The Prosecutor's Closing Argument in the Case of Faithe

■ Faithe asserts several errors based on statements by the prosecutor in his closing argument. Faithe objected to only one of these statements at the trial and, thus, must demonstrate plain error as to the others. F.R.Crim.P. 52(b).

■ Primarily Faithe argues that the prosecutor made factual assertions not based on evidence in the record concerning the extent and cost of his heroin addiction, his condition during withdrawal, and his ability to purchase heroin with the proceeds of the robbery. Defense counsel repeatedly objected to this line of argument, but his objections were overruled. It is clear that the prosecutor did make certain statements of fact which were not fully supported by the record in the course of arguing inferences from the evidence of Faithe's addiction. He did not, however, misstate or exceed the evidence in any significant respect, and, thus, his comments were well within the latitude permitted counsel in their closing arguments. *United States v. Gorostiza*, 468 F.2d 915, 916 (9th Cir. 1972). Improprieties in counsels' arguments to the jury do not require a new trial unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge. *United States v. Benson*, 487 F.2d 978, 981 (3rd Cir. 1973). Here the prosecutor advised the jury that he would be arguing inferences from the evidence, and the trial judge instructed that counsels' closing statements should not be considered evidence. Any prejudice, therefore, which might have resulted from the

prosecutor's statements was clearly neutralized.

Faithe contends that the prosecutor improperly suggested that he had independent knowledge of the defendant's guilt in stating to the jury that Faithe would not have proceeded to trial if the bank photographs taken during the robbery had more clearly depicted his face. The statement in the record[6] is rather obscure, and it is highly unlikely that it prejudiced Faithe's trial in any substantial way. Certainly it was insufficient to constitute plain error.

Similarly Faithe's argument that the prosecutor personally vouched for the credibility of a government witness[7] is unpersuasive. The witness's credibility was obviously in issue. Defense counsel had argued to the jury that the witness had lied on the stand, and the prosecutor's comment was a response to that argument. Although the prosecutor's statement did inferentially suggest his belief in her veracity, that impropriety does not constitute plain error in the context of this case. See *Orebo v. United States*, 293 F.2d 747, 749 (9th Cir. 1961); *United States v. Fong*, 475 F.2d 189, 190 (9th Cir.), *cert. denied*, 412 U.S. 942, 93 S.Ct. 2785, 37 L.Ed.2d 402 (1973).

This court has considered the other asserted errors in the prosecutor's summation and found that they lack merit.

### Defense Access to Government Witnesses

Faithe's argument that he was entitled to be present at the FBI's post-line-up interviews with eyewitnesses to the bank robbery is foreclosed by *Doss v. United States*, 431 F.2d 601 (9th Cir. 1970). His other contention that he was deprived of a fair opportunity to prepare his case by the Government's limitation of his access to government witnesses is not supported by the record and was properly rejected by the trial court on the defendant's motion to suppress their testimony. The prosecutor merely requested the witnesses not to talk with defense counsel on the particular day on which he intended to re-interview them. Defense counsel earlier had received from the Government discovery of the statements of all bank witnesses and had had ample opportunity to interview them. Moreover, he was not impeded in interviewing the bank witnesses after the Government's re-interviewing.

### Destruction of FBI Agents' Notes

Finally Faithe argues that he was denied a fair opportunity to prepare for trial by the destruction of handwritten notes made by FBI agents in connection with interviews with the defendant and with eyewitnesses to the robbery. The agents destroyed the notes after they used them to compile reports of the interviews. The agents interviewed the eyewitnesses on three occasions: shortly after the robbery, approximately a week later, and directly after the pre-trial line-up. Faithe moved for production of the FBI's notes after the first series of interviews. The district judge denied his motion but ordered that the agents not destroy any notes made in further interviews. Notwithstanding this court order, the agents subsequently destroyed the notes taken in the course of the two later sets of interviews. In consequence, the court barred the Government from introducing the interview reports compiled from these notes. Faithe contends that he was entitled to discovery of these notes under 18 U.S.C. § 3500 and

---

6. The prosecutor stated:

 Of course, the only problem with the photographs is that they are not that close that you can definitely tell from the facial features looking at Mr. Faithe. I am sure Mr. Faithe would not be on trial today, but they weren't. So, we have to rely on the testimony of the eyewitnesses for an identification.

7. The prosecutor stated:

 Ms. Wessels indicated in court, under the joint cross-examination of Mr. Keady, that he was able to trap her into saying she had lied to me when she talked to me Wednesday at the lineup. . . . Let me say this, she didn't lie in court. . . . Mr. Keady said she's lying on the stand. But she hasn't. She's been honest . . . she didn't deliberately lie to anybody, and she was more than candid on the witness stand . . . she never did lie.

argues that the district court's sanction was inadequate to neutralize the prejudice stemming from his inability to use the notes to impeach the eyewitnesses' testimony. He asserts that the notes from these interviews were critical in that only three witnesses indicated at the line-up that Faithe resembled the bank robber whereas six witnesses later identified him at the trial after being interviewed by the FBI.

In United States v. Johnson, 521 F.2d 1318 (9th Cir. 1975), this court held that it was the function of the district court to determine whether the handwritten notes of government agents made in the course of a criminal investigation constituted "statements" within the meaning of the Jencks Act, 18 U.S.C. § 3500(e)(1). The court held that the district court had erred in ruling that the agent's case report was sufficient to satisfy the requirements of the Jencks Act where the court had refused to compel production of the notes and had acted without inspecting them, in camera or otherwise. Here the trial court could not conduct the type of inquiry mandated by Johnson because of the agents' destruction of the notes. The trial court determined, however, that whatever prejudice may have resulted from the destruction of the notes was adequately neutralized by its sanction against the Government, prohibiting its introduction of the interview reports compiled from the notes. We agree. The administration of the Jencks Act is entrusted to the "good sense and experience" of the district judges "subject to appropriately limited review of appellate courts." *Palermo v. United States*, 360 U.S. 343, 353, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1959); *United States v. Augenblick*, 393 U.S. 348, 355, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). Similarly, it seems appropriate to place primary reliance on the district judge to assess the circumstances in which possibly producible statements have been destroyed, and determine appropriate sanctions, if any. *Cf., United States v. Lonardo*, 350 F.2d 523, 537 (6th Cir. 1965) (O'Sullivan, J., dissenting).[8]

■ *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976) does not require a contrary conclusion. In *Harris*, this court adopted the rule of the District of Columbia that the original rough notes taken by FBI agents in interviews with the accused or prospective government witnesses in the course of a criminal investigation must be preserved, even though later incorporated in a formal interview report. *United States v. Harrison*, 173 U.S.App.D.C. 260, 524 F.2d 421 (1975). While application of the rule in *Harris* to the present case might arguably require a reversal of Faithe's conviction, we hold that the *Harris* rule should not be applied here retroactively. See *United States v. Robinson*, 546 F.2d 309 (9th Cir. 1976). At the time of the events with which we are here concerned, the agents were justified in relying on *United States v. Carrasco*, 537 F.2d 373 (9th Cir. 1976) where this court indicated that the preliminary notes of an agent from which he later prepares a report are not statements as that term is defined by the Jencks Act. See also *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).

■ Similarly Faithe's argument based on the notes made of his statement to an FBI agent does not require a reversal of his conviction. Faithe was provided with the agent's report of their discussion which included Faithe's inculpatory statement.[9] Al-

---

8. Although we hold here that the agents' destruction of their interview notes does not require reversal of Faithe's conviction, we cannot condone the agents' failure to comply with the district court's order to preserve these notes pending a judicial determination as to their producibility. In view of *United States v. Johnson*, 521 F.2d 1318 (9th Cir. 1975) and *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), there should be no doubt henceforth that notes taken by federal agents in interviews with the accused or with prospective government witnesses and later incorporated in formal reports must not be destroyed until such time as the district court has determined whether the notes constitute producible statements under the Jencks Act.

9. Faithe is said to have stated to the agent: "If I make restitution, would the bank press charges?"

though he contends that the agent quoted him out of context and that the agent's notes are the best evidence of the context in which the statement was made, Faithe had an adequate opportunity to present this issue in his cross-examination of the agent and in his closing argument to the jury, but apparently chose not do do so.

AFFIRMED.