**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Waldo BIRGES, Sr., Terry Lee
Hall, Defendants-Appellants.**

**Nos. 82–1744, 82–1761.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 14, 1983.

Decided Jan. 10, 1984.

Certiorari Denied April 16, 1984.
See 104 S.Ct. 1926.

Edward R.J. Kane, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Cal J. Potter, III, Joseph M. Kadans, Las Vegas, Nev., for defendants-appellants.

Before DUNIWAY, ALARCON, and BOOCHEVER, Circuit Judges.

ALARCON, Circuit Judge:

John Birges and Terry Hall appeal from their convictions arising out of the bombing of Harvey's Casino [South Lake Tahoe].

Birges was convicted of attempt to interfere with commerce by threats of violence, interstate travel in aid of racketeering, conspiracy, and transportation of explosives in interstate commerce. He asserts three claims of error: (1) that the failure of his attorney to represent him adequately denied him his sixth amendment right to the effective assistance of counsel; (2) that two communications between the judge and the jury, after the jury had retired, constituted supplemental jury instructions, requiring counsel to be informed and defendant to be present; (3) that comments made in closing argument were "harsh and vindictive", thereby constituting prosecutorial misconduct.

Hall appeals his convictions for conspiracy and transportation of explosives in interstate commerce. Hall submits three points for review: (1) that the evidence presented at trial was not sufficient to support the finding of criminal intent; (2) that the inconsistency of the verdicts rendered by the jury required his motion for acquittal to be granted; (3) that a reference to him as a co-conspirator was improper and constituted prejudicial error.

Finally, both defendants contend that the trial court erred in denying their motions to change venue.

We find that Birges and Hall have failed to show grounds for a reversal of their convictions. The judgment of the trial court is affirmed.

FACTS

It was the government's theory at trial that Birges, who owed extensive gambling debts to Harvey's Casino and Harvey's Inn, planned to extort money from Harvey's Casino. To carry out his plans, Birges built a highly sophisticated bomb. He obtained approximately 18 cases of dynamite by breaking into a Pacific Gas & Electric building. The bomb was housed within two steel boxes: a small box, 15 inches by 12 inches

which contained the dynamite and a larger box, 2½ feet by 3½, which was nearly three feet tall. The boxes were constructed of ¼ inch thick steel plate, and were covered by a gray fabric marked with the letters IBM and fictitious part numbers. The boxes thus were made to look like a business machine, five to six feet long and three feet wide.

Birges included numerous safeguards against possible disarming. The bomb package contained a float switch, so that the bomb would detonate if flooded with water. The screws on the package were connected to electrical currents to avoid tampering. Aluminum was placed inside the plastic used to line the box; if the box were drilled, the drill would complete the connection. Switches were installed to trigger the bomb if the lid were removed. The bomb also contained a movement device: a tilt mechanism consisting of an eight inch tall metal cylinder, two to three inches in diameter, with a pendulum inside. If the box were moved, the motion would cause the pendulum to hit the sides of the cylinder and detonate the bomb.

Birges invited Hall and Willis Brown to assist him in delivering the bomb. The three men arrived in the Lake Tahoe area near daylight, and drove to the casino. Birges showed Hall and Brown which door to use to deliver the bomb. They then checked into a motel. Hall registered under the name "Joey Avetto" and set forth a false address. When they left the motel in the middle of the night, the men wiped all traces of fingerprints from the room.

The three men took the bomb to the casino and parked across the street from Harvey's. A license plate was stolen from the rear of another van parked nearby. Birges and Hall attached it with rubber bands over their van's existing plate.

The men then placed the bomb on a specially constructed cart, tied the cart to the back bumper of the truck and pulled into Harvey's lot.

Birges left the other two men, and entered the casino. Hall and Brown took the cart to the casino entrance. The package was removed from the cart and pushed through the lobby to the elevator.

The device was placed in the elevator and taken up to the offices of the casino. The bomb was left in the hallway after the gray cover was removed.

The ransom note left with the bomb requested the delivery of three million dollars to a specified place in the desert. The note contained a warning that the bomb should not be touched because it might explode accidentally. The bomb exploded the following day during an attempt to deactivate it.

The case received extensive coverage in newspapers, radio and television. Most of the publicity occurred within the first two months after the bombing.

At trial, Birges admitted constructing the bomb, but testified that he did so under duress. He told the jury that people in the "mob" forced him to commit the act in order to collect the destruction insurance. According to Birges, a "mob" figure named Charlie caused two men to assault Birges in order to force him to carry out the extortion plan.

In his defense Hall testified that he was a "dupe" in the scheme. He was told they were delivering a package to the office of the casino owner as a joke and did not know that the package contained a bomb.

## I.

### Effectiveness of Counsel

Birges argues that he was denied his Sixth Amendment right to effective assistance of counsel because his counsel failed to subpoena witnesses and present his desired defense.

Where ineffectiveness of counsel is alleged, the defendant must point to errors or omissions in the record on appeal which establish that he did not receive adequate representation. *Cooper v. Fitzharris,* 586 F.2d 1325, 1332 (9th Cir.1978) (*en banc*), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). He has the further

burden of demonstrating from the record that there is a reasonable likelihood that counsel's errors or omissions prejudiced his right to a fair trial. *United States v. Tucker,* 716 F.2d 576, 587–92 (9th Cir.1983); *Cooper v. Fitzharris,* 586 F.2d at 1331. *See also Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972) (unless "reasonable possibility" that improperly admitted evidence contributed to conviction, reversal is not required); *United States v. Valle-Valdez,* 554 F.2d 911, 915 (9th Cir.1977) (where constitutional error occurs, defendant must show reasonable possibility of prejudice).

■ The customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255. *United States v. Kazni,* 576 F.2d 238, 242 (9th Cir.1978). This is so because usually such a claim cannot be advanced without the development of facts outside the original record. *Id.*

In *People v. Pope,* 23 Cal.3d 412, 152 Cal.Rptr. 732, 590 P.2d 859 (1979), the California Supreme Court cogently urged reviewing courts to exercise caution in tackling insufficiency of counsel claims on direct appeal where the record is incomplete.

> Otherwise, the appellate courts would become engaged in the perilous process of second-guessing. (Citation omitted) Reversals would be ordered unnecessarily in cases where there were, in fact, good reasons for the aspect of counsel's representation under attack. Indeed, such reasons might lead a new defense counsel on retrial to do exactly what the original counsel did, making manifest the waste of judicial resources caused by reversal on an incomplete record.

*People v. Pope,* 23 Cal.3d 412 at 426, 152 Cal.Rptr. 732, 590 P.2d 859.

■ In the present case, the record is not sufficient for us to analyze the effectiveness of Birges' counsel. We cannot ascertain from the record what evidence the requested witnesses would have provided, nor can we gauge the impact their testimony might have had on Birges' defense.

## II.

### *Communication with the Jury*

Birges contends that his motion for a new trial was improperly denied. Specifically, he challenges the propriety of two communications between the judge and jury which occurred during jury deliberations.

### A. *Communication Concerning Dictionary*

■ Birges contends that the trial judge, in response to a request, erroneously supplied a dictionary to the jury. He complains that the dictionary is a supplemental instruction, requiring counsel to be informed and defendant to be present, pursuant to Fed.R.Crim.P. 43. Rule 43 guarantees to a defendant in a criminal trial the right to be present "at every stage of the trial including the impaneling of the jury and the return of the verdict . . ." A violation of the rule does not compel reversal unless a reasonable possibility of prejudice is shown. *United States v. Alessandrello,* 637 F.2d 131, 139 (3d Cir.1980), *cert. denied,* 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981).

This issue was presented to the court in *United States v. Gunter,* 546 F.2d 861 (10th Cir.1976), *cert. denied,* 431 U.S. 920, 97 S.Ct. 2189, 53 L.Ed.2d 232 (1977). In *Gunter,* the court stated:

> The jury, while deliberating, sent a note to the judge asking for a definition of the word "tacitly." Without consulting with counsel, the trial judge simply sent a Webster's dictionary into the jury room. Such may well have been error, but if it be deemed error, it was most certainly harmless error. No prejudice has been shown.

*Gunter,* 546 F.2d at 869.

■ Unlike the court in *Gunter,* we have no doubt that the sending of a dictionary into the jury room, without consulting counsel, is error. Questions or disputes as to the meaning of terms which arise during jury deliberations should be settled by the

court after consultation with counsel, in supplemental instructions. Such guidance will avoid the danger that jurors will use the dictionary to construct their own definitions of legal terms which do not accurately or fairly reflect applicable law. The meager record presented to us on this issue, however, does not demonstrate that any prejudice occurred as a result of the alleged introduction of a dictionary into the jury's deliberations.

### B. *Communication Concerning the Reading of Testimony*

During deliberations, the jurors sent a note to the court which read: "Is it possible for us to obtain testimony without returning to the courtroom?" The judge replied: "No! You must rely on your memory."

■■■ The decision to honor a request that the court reporter read his notes of certain testimony for the jury's benefit after deliberation has begun is left to the discretion of the trial judge. *United States v. Rohrer,* 708 F.2d 429, 435 (9th Cir.1983). Such a ruling will not be disturbed on appeal, absent a showing of abuse of discretion. *United States v. Baxter,* 492 F.2d 150, 175 (9th Cir.1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

■■■ It is error, however, under Rule 43 for the court to deny the jury's request without consulting counsel for their views before exercising such discretion. Had the court conferred with counsel, the trial court's reply to the communication might have been more responsive to the jury's question. The jury did not ask the court if it was required to rely on its memory in resolving any uncertainties as to the exact testimony of a witness. Apparently the jury wanted to know if it was possible to receive the recorded testimony of witnesses in the jury room.

■■■ Birges, however, has failed to demonstrate that the court's error was prejudicial to his defense. *See Powell v. Kroger Co.,* 644 F.2d 1245, 1247 (8th Cir.1981) (ex parte communication with jurors does not compel reversal where prejudice is not shown). In *United States v. Medansky,* 486 F.2d 807 (7th Cir.1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 886 (1974), the jury sent a communication to the judge requesting transcripts of the trial proceedings. The judge entered the jury room and told the jurors that transcripts would not be provided; that they had to rely upon their own recollections. The reviewing court concluded that this was not prejudicial error. *Id.* at 816.

Birges has not demonstrated that the errors committed by the trial judge responding to the jury's communications affected the outcome of the trial. The motion for a new trial was properly denied.

### III.

### *Prosecutorial Misconduct*

In Birges' *pro per* brief, he argues that the prosecutor made use of "unnecessary, vindictive, and harsh language" in his final argument. Specifically, Birges claims that the prosecutor's comments to the jury that Birges' testimony contained numerous lies and that his duress defense was replete with fabrication and imagination, constitute misconduct.[1]

■■■■ "In closing arguments, both defense attorneys and prosecution attorneys

---

1. Birges points to two statements made by the prosecutor:

   1. "As far as lies on the witness stand, I think it would be a fair statement under the evidence that if the lies told by Mr. Birges on the stand were weighed against the truths told by Mr. Birges on the stand, the scales of justice would have tipped him from his chair long before he concluded his testimony. We do not want them and we do not rely on them."

2. "I submit to you that the reason he did that (made no attempt to contact the alleged mob figure Charlie or to tell anyone that he existed prior to Birges' attempted duress defense at trial) is fairly obvious; Charlie and the tall man and the short man do not exist. They are figments of Mr. Birges' imagination fabricated by him to escape the responsibility of his criminal actions in what I fervantly hope will be an unsuccessful attempt to escape that responsibility."

are allowed reasonably wide latitude. They may strike 'hard blows' based upon the testimony and its inferences ..." *United States v. Gorostiza,* 468 F.2d 915, 916 (9th Cir.1972). Improprieties in counsel's arguments to the jury do not constitute reversible error "unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *United States v. Parker,* 549 F.2d 1217, 1222 (9th Cir.), *cert. denied,* 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977). *See also United States v. Foster,* 711 F.2d 871, 883 (9th Cir.1983).

Birges failed to object to these remarks when made, and thus deprived the trial court of the opportunity to take remedial action. Because they were not brought to the attention of the court, the statements must be viewed under the "plain error" standard of review, pursuant to Fed.R. Crim.P. 52(b). *United States v. Parker,* 549 F.2d at 1222.

■ The comments made by the prosecutor did not constitute misconduct. It is neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant who has taken the stand. The prosecutor's interpretation of Birges' duress claim as a "fabrication" is also well within the bounds of acceptable comment. The prosecutor's remarks were neither grossly nor prejudicially improper.

### IV.

#### *Sufficiency of the Evidence*

Hall maintains that his motion for a judgment of acquittal should have been granted. Hall acknowledges that he participated in the delivery of the explosive device to the casino, but he argues that the evidence was insufficient to show that he had the specific intent to commit the crime.

■ The standard of review for a motion for a judgment of acquittal is whether the evidence, considered favorably to the government, was such as to permit a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt. *United States v. Hazeem,* 679 F.2d 770, 772

(9th Cir.1982), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982).

■ Intent may be inferred from objective facts and the actions of the defendant. *Gallion v. United States,* 386 F.2d 255, 257 (9th Cir.1967). The following evidence was sufficient to justify a rational conclusion beyond a reasonable doubt that Hall had the requisite intent:

1. The physical appearance of the bomb device as packaged would have aroused the suspicion of a reasonable person.

2. The delivery involved peculiar circumstances. The package was to be delivered to the casino before 6:00 in the morning. The van was parked to one side of the parking lot in a construction area, instead of at the casino entrance.

3. The delivery van's license plate was disguised during the delivery. The device was transferred to a cart before it was taken across the parking lot.

4. Hall registered in a Lake Tahoe Motel under a fictitious name and address.

5. Hall wiped away all fingerprints in his motel room.

■ Evidence of the accused's conduct shortly before the offense which is inconsistent with innocence is relevant to prove specific intent. *Cf. Kirschbaum v. United States,* 407 F.2d 562, 566 (8th Cir. 1969). Concealment of identity is also a commonly recognized indicator of guilty knowledge. *See United States v. Greiser,* 502 F.2d 1295, 1299 (9th Cir.1974); *Marcoux v. United States,* 405 F.2d 719, 721 (9th Cir.1968). This concept has been specifically applied to false hotel registration. *United States v. Sutton,* 446 F.2d 916, 922 (9th Cir.1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 699, 30 L.Ed.2d 675 (1972).

The denial of Hall's motion for a judgment of acquittal was not erroneous.

### V.

#### *Inconsistency of the Verdicts*

Hall claims that there is insufficient evidence to support his conviction on Count III

because of inconsistent verdicts. Hall argues that Count I of his indictment, of which he was found "not guilty," embodies a finding of conspiracy, and thus, contradicts his conviction for conspiracy on Count III.

The four-count indictment charged Hall with the following offenses: attempt to interfere with commerce by threats of violence, a violation of 18 U.S.C. § 1951 (Count I); interstate travel in aid of racketeering and aiding and abetting, a violation of 18 U.S.C. §§ 1952(a)(3) and 2(a) (Count II); conspiracy, a violation of 18 U.S.C. § 371 (Count III); transportation of explosives in interstate commerce and aiding and abetting, a violation of 18 U.S.C. §§ 844(d) and 2(a) (Count IV).

Hall was found guilty of Counts III and IV and was acquitted of Counts I and II.

■ Inconsistent verdicts may stand, even when a conviction is rationally incompatible with an acquittal, provided there is sufficient evidence to support the guilty verdict. *United States v. Brandon*, 633 F.2d 773, 779 (9th Cir.1980); *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932).

■ We are satisfied that the evidence was sufficient to permit a rational trier of fact to conclude that Hall was guilty of the charge in Count III.

## VI.

*Reference to Hall as a Co-conspirator*

Hall claims that the government, with the permission of the court, wrongfully referred to him as a co-conspirator during the trial. The reference occurred during the examination of one of the other defendants in the case:

> Objection: [By *Hall's attorney*] Your Honor, I would like the court to admonish the jurors that any statements made by another person out of this court that don't pertain to Mr. Birges or the person making that statement are hearsay as to Mr. Hall.

> *Prosecutor*: The statements made by a coconspirator in the course of a conspiracy are admissible against all conspirators.

> *Court*: Yes, objection overruled, you may proceed.

A statement made by a co-conspirator during the course of and in furtherance of the conspiracy is admissible against a party under Fed.R.Evid. 801(d)(2)(D). Hall's claim of error is not directed to the admission of such evidence. Instead he objected to the prosecutor's use of the word "conspirator," in the presence of the jury in responding to defense counsel's comments.

The jury was properly instructed as to all of the essential elements of the offense of conspiracy. The jury was further instructed that it must find beyond a reasonable doubt (1) that a conspiracy existed and (2) that Hall was one of the members thereof before it could consider the statements of a co-conspirator.

■ The record does not demonstrate that the judge's ruling on the objection led the jury to believe that the court had conclusively determined that Hall was a conspirator. Any error which may have occurred in permitting the discussion concerning the admissibility of a co-conspirator's statement to occur in the presence of the jury was harmless in light of the court's conspiracy instruction. *United States v. Gonzalez*, 715 F.2d 1411, 1412–13 (9th Cir. 1983).

## VII.

*Change of Venue*

Birges and Hall each challenge the trial court's denial of their motions for a change of venue. They urge that the extensive media coverage of the casino bombing so prejudiced potential jurors as to render the selection of an impartial jury impossible. They further contend that Nevada citizens are so protective of their gambling industry that the opportunity for a fair trial was unavailable in any city in Nevada, regardless of pretrial publicity.

The motions for change of venue were filed prior to voir dire, and were opposed by the government. An evidentiary hearing was held before a Magistrate. The motions were denied "without prejudice to the right to renew the motions at the close of voir dire." Thereafter, the case was transferred from Reno to Las Vegas.

Birges and Hall claim that, in spite of the failure of their counsel to challenge the fairness of the jury upon completion of voir dire, this court should rule that there is sufficient evidence of inherent prejudice to constitute plain error.

■ A trial judge is granted broad discretion in ruling on a change of venue motion, and will only be reversed for an abuse of discretion. *United States v. Flores-Elias,* 650 F.2d 1149, 1150 (9th Cir.1981), *cert. denied,* 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed.2d 223 (1982).

In the landmark case of *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), the Supreme Court examined the voir dire examination of the jurors for evidence of "actual prejudice" in reviewing petitioner's claim that the trial court erred in denying his renewed motion for a change of venue following jury selection. The Court concluded that the voir dire indicated "no such hostility to petitioner by the jurors who served in his trial as to suggest a partiality that could not be laid aside." 421 U.S. at 800, 95 S.Ct. at 2036.

■ We discussed the ramifications of pretrial publicity in *United States v. Bailleaux,* 685 F.2d 1105 (9th Cir.1982). There this court stated: "It is not all publicity that causes prejudice to a defendant, but only that publicity that operates to deprive the defendant of a fair trial." 685 F.2d at 1108. In *Bailleaux,* we concluded that the trial court's careful voir dire examination demonstrated that it was possible to obtain a fair and impartial jury notwithstanding prejudicial pretrial publicity. Under such circumstances, it is not prejudicial error to deny a change of venue. *Id.* at 1109.

In the instant matter, eight witnesses were examined and 21 exhibits were presented at the hearing on the motion for a change of venue. The magistrate's written order contained a complete examination of the exhibits and testimony, as well as a full discussion of the applicable law.

Later, during voir dire examination, the jurors were questioned at length by the trial judge concerning any bias against the defendants. The judge also solicited questions from defense counsel to be put to the prospective jurors. The court also inquired of each juror separately as to the existence of any animosity towards Birges and Hall because of the juror's feelings about the casino industry. None of the jurors indicated that he was prejudiced because of his attitude concerning gambling.

■ The voir dire examination by the trial judge established that the jurors selected to try this case were untainted by prejudice.

As noted in *Murphy,* during voir dire the trial court can determine whether it is possible to select a fair and impartial jury from persons subjected to persuasive publicity. During voir dire the court is no longer dealing with the likelihood that potential jurors may be biased. The trial judge is able to scrutinize the answers of actual jurors to see if they are prejudiced in order to determine whether a subsequent motion for change of venue has merit.

Here, in contrast to the procedure followed by defense counsel in *Murphy,* the change of venue motion was not renewed following the voir dire examination of the jury. We are satisfied that the voir dire examination produced a fair and impartial jury. The denial of the pretrial motion for change of venue was not prejudicial in light of the circumstances existing at the time of the jury selection.

AFFIRMED.