35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory McFARLAND, Defendant-Appellant.
 No. 93-10322.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 10, 1994.
Decided Sept. 13, 1994.
 
 1
 Before: NOONAN and T.G. NELSON, Circuit Judges, EZRA,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Gregory McFarland ("appellant" or "McFarland") appeals his conviction in the district court on the charge of being a felon in possession of a firearm, 18 U.S.C. Sec. 922(g)(1). On appeal he argues that the district court erred by (1) re-reading the testimony of three government witnesses after a long weekend and immediately after the alternate had been seated, before allowing the new jury to deliberate; and (2) denying defense counsel's objections to the prosecutor's rebuttal arguments, when the prosecutor allegedly misstated the evidence and allegedly commented on McFarland's decision not to testify.*** We affirm.
 
 The Read-Back of Testimony
 
 4
 McFarland argues for the first time on appeal that the district court abused its discretion in granting the jury's request for a read-back of the three police officers' testimony. While defense counsel made several requests concerning the method of read-back, at no time did defense counsel object to the read-back itself.
 
 
 5
 At 12:15 p.m. on the first day of deliberations, the jury sent out a note, asking to have the testimony of Officers Yaranon, Wong, and Fontana re-read to them. At 12:35 p.m., before the court had responded to the earlier request, the jury sent out an additional note, advising that one of the jurors had a conflict regarding service the following week. Judge Walker advised counsel that there was no way to accommodate both the conflicted juror's need for a rapid resolution of deliberations and the jury's request for the read-back of testimony, which would take time for the court reporter to prepare. Counsel and the court eventually decided to excuse the conflicted juror that afternoon, and to begin on Monday with a reconstituted jury and with the read-back.
 
 
 6
 Defense counsel asked for and was granted an opportunity to review a copy of the transcript before it was read to the jury on Monday, November 30. The court granted defense counsel's request to have the transcript read, rather than simply submitted to the jury in transcript form. Defense counsel agreed to the read-back outside the presence of counsel or the court, and did not object to the submission of the written transcript to the jury. When the jury reconvened on Monday, the court instructed the jurors to begin their deliberations anew, in order to allow the substituted juror an equal opportunity to explore the issues. After the court repeated requested defense instructions concerning burden of proof, the presumption of innocence, and the defendant's right not to testify, the court reporter read the testimony to the jury outside the presence of counsel.
 
 
 7
 The district court's decision to grant a jury's request for a read-back of testimony is reviewed for abuse of discretion. U.S. v. Nickell, 883 F.2d 824 (9th Cir.1989). "In deciding whether to allow the jury to review testimony during deliberations, the court should avoid giving undue emphasis to particular testimony." Id. ( citing U.S. v. Binder, 769 F.2d 595, 600 (9th Cir.1985)).
 
 
 8
 The court finds no abuse of discretion in the district court's decision to allow the read-back. By having all of the officers' testimony read back (cross in addition to direct examination), the court avoided placing undue emphasis on any particular portion of the testimony. The court also juxtaposed the government witness testimony with the requested defense instructions. Finally, the court carefully instructed the reconstituted jury after the long weekend that it would have to begin its deliberations again, in order to bring Ms. Stout "up to speed." There is no evidence that the jury disregarded this instruction or that Ms. Stout in particular focused exclusively on the officers' testimony in reaching her verdict.
 
 
 9
 Moreover, even if this court were to conclude that Judge Walker erred in allowing the read-back, defense counsel's agreement to the read-back amounts to invited error. "Under circumstances in which the trial court announces its intention to embark on a specific course of action and defense counsel specifically approves of that course of action, we will regard any error as having been caused by the actions of defense counsel, and review the error under the doctrine of invited error." U.S. v. Ahmad, 974 F.2d 1163, 1165 (9th Cir.1992) ( citing U.S. v. Schaff, 948 F.2d 501, 506 (9th Cir.1991)). An invited error is only cause for reversal in the " 'exceptional situation' " in which it is "necessary to preserve the integrity of the judicial process or prevent a miscarriage of justice." Id. ( citing Guam v. Alvarez, 763 F.2d 1036, 1038 (9th Cir.1985)). Here, defense counsel made numerous requests as to the way in which the court should present the testimony, but never raised any objection to the read-back itself. She therefore invited any error which may have occurred. McFarland has not established that his is such an exceptional situation that this court must reverse.
 
 
 10
 In sum, McFarland has failed to meet his burden under either the invited error doctrine or the abuse of discretion test.
 
 
 11
 Prosecutorial Misconduct in Rebuttal Argument
 
 
 12
 Appellant contends that the prosecutor made two errors during his rebuttal argument, which the district court failed to recognize. First, the prosecutor allegedly misstated the evidence concerning McFarland's body size at the time of the crime, when he argued to the jury that there was no evidence that the leather jacket did not fit McFarland in March of 1992. Second, the prosecutor allegedly commented on McFarland's decision not to testify, in arguing to the jury that there was no evidence that McFarland was anywhere but in Mr. Johnson's apartment on the day of the crime.
 
 
 13
 The ruling of the trial judge with respect to closing argument will not be disturbed absent an abuse of discretion. U.S. v. Guess, 745 F.2d 1286, 1288 (9th Cir.1984), cert. denied, 469 U.S. 1225 (1985). Improprieties in counsel's arguments do not constitute reversible error unless they are "so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." U.S. v. Birges, 723 F.2d 666, 672 (9th Cir.), cert. denied, 466 U.S. 943 (1984) (citing U.S. v. Barker, 549 F.2d 1217, 1222 (9th Cir.), cert. denied, 430 U.S. 971 (1977)).
 
 
 14
 In fashioning closing arguments, prosecutors are allowed "reasonably wide latitude," and are allowed to argue reasonable inferences based on the evidence. U.S. v. Lester, 749 F.2d 1288, 1301 (9th Cir.1984) ( citing U.S. v. Birges, 723 F.2d 666, 671-72 (9th Cir.), cert. denied, 446 U.S. 943 (1984)); U.S. v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991) ( citing U.S. v. Gray, 876 F.2d 1411, 1417 (9th Cir.1989), cert. denied, 110 S.Ct. 2168 (1990)). The prosecutor's remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. U.S. v. Gwaltney, 790 F.2d 1378, 1385 (9th Cir.1986), cert. denied, 479 U.S. 1104 (1987). Improprieties in closing arguments are not reversible error unless they are so gross as to probably prejudice the defendant, and the prejudice is not neutralized by the trial judge. Lester, 749 F.2d at 1303 ( citing Birges, 723 F.2d at 671-72); U.S. v. Lane, 708 F.2d 1394, 1399 (9th Cir.1983). If a defendant opens the door to an argument, it may be "fair advocacy" for the prosecutor to enter. U.S. v. Lopez, 803 F.2d 969, 972 (9th Cir.1986) ( citing U.S. v. Falsia, 724 F.2d 1339, 1342 (9th Cir.1983)).
 
 
 15
 1. Alleged Misstatement of Evidence Re: Body Size
 
 
 16
 The evidence and argument concerning McFarland's body size was as follows: (1) McFarland tried on the jacket without a shirt or sweater during his defense case; (2) McFarland's sister testified that McFarland was the same "sizewise" on the date of trial (6 feet tall, 185 pounds) and on the date of arrest, and that he had neither gained nor lost a lot of weight; (3) Officer Fontana testified that the person he chased was 5'9" and 150 pounds; (4) in her closing, defense counsel conceded that the jacket introduced into evidence was worn by the man that the officers chased on March 14, 1992; (5) the prosecutor, in his closing, argued to the jury that the jacket fit McFarland, even though the sleeves were too short for him;[1] (6) defense counsel countered by having McFarland stand before the jury during her closing, and argued that the sleeves were too short and the jacket did not fit; (7) in his rebuttal, the prosecutor stated "there is no evidence that the defendant was as musclebound back in March of 1992 as he is today."[2] Defense counsel objected to this remark, but the district court overruled the objection.
 
 
 17
 Even a cursory review of the evidence indicates that McFarland's size at the time of the crime (i.e. whether the jacket would have fit him then) was a factual issue for the jury to resolve and about which counsel properly argued. Defense counsel even invited the prosecutor to make this argument, when she stated out of the jury's presence "I would submit that ... as to the fitting of the jacket, that would be a fact for the jury to find.... [T]he prosecutor can certainly argue that 'We don't know that he was not that small on March 13.' "[3]
 
 
 18
 In light of this factual dispute, the prosecutor's closing remarks were proper, because they consisted only of argument that the jacket fit. In contrast, the prosecutor's remarks during rebuttal about the evidence were improper: he characterized the evidence incorrectly when he asserted that there was no evidence McFarland was "as musclebound" in March of 1992 as he appeared at trial. McFarland's sister had testified to just the opposite: she stated that his size had remained the same, and that he had neither gained nor lost weight since March of 1992. By ignoring this witness's testimony, the prosecutor misstated the evidence.
 
 
 19
 In order to reverse, though, this court must determine if this error was harmless. Fed.R.Crim.P. 52(b). First, the court overruled McFarland's objection, and therefore did not give an immediate curative instruction. However, included within the court's instructions to the jury was the following instruction concerning arguments by counsel:
 
 
 20
 The arguments and statements of the attorneys are not evidence. If you remember the facts differently from the way the attorneys have stated them, you should base your decision on what you remember.
 
 
 21
 This instruction, given after the attorneys' closing arguments, was sufficient to neutralize any prejudice caused by the prosecutor's remarks.
 
 
 22
 In addition, the prosecution amassed a significant amount of evidence proving McFarland's guilt. He had access to Ryan's keys, he was identified by several witnesses as the driver of Ryan's car and as the man in Johnson's apartment, and when he left Johnson's apartment, Ryan's gun was found inside. The defense points to various factual disputes regarding McFarland's identity (i.e., his size on the date of the crime, the tattoos); however, the jury was free to resolve these disputes (and to evaluate witness credibility) in accordance with the government's theory. Assuming that it did so, there was sufficient evidence to sustain a guilty verdict. See U.S. v. Davis, 932 F.2d 752 (9th Cir.1991) (even where no curative instruction is given, or where instruction might be inadequate, court should not reverse conviction if substantial, independent, and credible evidence of defendant's guilt overwhelms whatever incriminating aspects the prosecutor's comments may have had in isolation). Because it is unlikely that the prosecutor's single comment affected the verdict, we find that this error was harmless.
 
 
 23
 2. Prosecutor's Alleged Comment on McFarland's Failure to Testify
 
 
 24
 McFarland next complains that the prosecutor commented on his decision not to testify in his rebuttal argument:
 
 
 25
 The defense, ladies and gentlemen, is not required by our Constitution to put on any case. They put on a case to you, and I ask you: Where is the evidence in this record that Mr. McFarland was anywhere but Mr. Johnson's apartment?
 
 
 26
 Defense counsel objected to this remark, and the court overruled the objection. After the court instructed the jury and the jury retired to deliberate, defense counsel raised the matter outside the presence of the jury. At that point, the government requested that a curative instruction be given to clear the issue:
 
 
 27
 Just as a precaution, Your Honor, since I don't think there's any error whatsoever up to this point in the trial, if you think there's anything in any way remotely a problem with what I said, after Mr. Linkerman [the court reporter] reads it back to you, then I would prefer a curative instruction to the jury.
 
 
 28
 The district court agreed that a curative instruction should be given. The district court specifically cautioned the jury about the remark at issue:
 
 
 29
 But a comment was made by Mr. Bevan, the Assistant United States Attorney, with respect to the defendant putting on a case that I think deserves emphasis on the instruction that I gave with respect to the effect on the defendant's failure to testify.
 
 
 30
 The court then repeated the instructions concerning the defendant's right not to testify and reasonable doubt. Defense counsel made no objections to these instructions.
 
 
 31
 The Fifth Amendment prohibits the prosecutor from commenting on the defendant's decision not to testify. Griffin v. California, 380 U.S. 609, 615 (1965). Whether a prosecutor's comment violates the Fifth Amendment depends upon whether the language was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure to testify." U.S. v. Davis, 960 F.2d 820, 829 (9th Cir.1992) ( citing U.S. v. Bagley, 772 F.2d 482, 494 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986)); People of the Territory of Guam v. Ojeda, 758 F.2d 403, 406 (9th Cir.1985). However, the government may comment on the defendant's failure to present witnesses without threatening the Fifth Amendment "so long as [the comment] is not phrased to call attention to defendant's own failure to testify." U.S. v. Lopez-Alvarez, 970 F.2d 583, 596 (9th Cir.), cert. denied, 113 S.Ct. 504 (1992); U.S. v. Castillo, 866 F.2d 1071, 1083 (9th Cir.1988).
 
 
 32
 The Ninth Circuit has recently articulated a three-part test to determine whether such commentary which does implicate Fifth Amendment rights mandates reversal: (1) the commentary must be extensive; (2) an inference of guilt from silence is stressed to the jury as a basis for the conviction; and (3) evidence exists to support an acquittal. Jeffries v. Blodgett, 988 F.2d 923, 934 (9th Cir.1993) ( citing Lincoln v. Sunn, 807 F.2d 805, 809 (1987)); U.S. v. Tarazon, 989 F.2d 1045 (9th Cir.1993).
 
 
 33
 The defense in this case rested primarily on the issue of identity: The government called eyewitnesses who identified McFarland as the person who was chased by officers and who hid in Johnson's house. McFarland contended that the officers arrested and charged the wrong person. There were other persons, apart from the appellant himself, who could have testified as to McFarland's whereabouts on the day of the crime. Because the defense offered no such testimony to support an alternative theory regarding McFarland's location on the day in question, the prosecutor's comment goes to a weakness in the alibi defense, not to the defendant's silence. A comment on failures of the defense case, as opposed to failures of the defendant, to counter prosecution testimony is not a violation of the Fifth Amendment. Lopez-Alvarez, 970 F.2d at 596; Castillo, 866 F.2d at 1083.
 
 
 34
 Even if this comment did implicate the defendant's right not to testify, we would affirm the district judge under the Jeffries test. While evidence existed to support an acquittal (i.e. if the jury believed the defense version of the story), the comment was neither extensive nor intended to encourage the jury to infer guilt from silence. Rather, this was a "single, isolated incident" targeting the defense's failure to present a cohesive, complete alternative version of the facts. See Jeffries, 988 F.2d at 934. Consequently, even if this were error, it would not approach constitutional proportions.
 
 
 35
 AFFIRMED.
 
 
 
 *
 The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 ***
 A published opinion filed concurrently with this memorandum disposition covers the remaining issues
 
 
 [1]
 The prosecutor's comment was:
 The jacket, we went through the--exercise yesterday of the defendant trying on this jacket. The jacket, whether you believe the sleeves were too short for him or not, indeed, this jacket will fit the defendant.
 You'll notice that there's dirt on this jacket, consistent with some [sic] running through the backyards of people's houses to get away.
 
 
 [2]
 The full comment was:
 Furthermore, there is no evidence that the defendant was as musclebound back in March of 1992 as he is today. You saw him yesterday; he is clearly musclebound. There's no evidence that he was that buffed, as they say, back in March, when the events took place in this case.
 
 
 [3]
 Defense counsel stated, at sidebar conference:
 I would submit that as to the jacket, as to the fitting of the jacket, that would be a fact for the jury to find as to--the prosecutor can certainly argue that "We don't know that he was not that small on March 13."